UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | | |
|---|---|---|
| ROBERT STONE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 2:25-cv-00136-JPH-MJD |
| | ) | |
| CHRISTINA REAGLE, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**ORDER SCREENING AMENDED COMPLAINT AND DIRECTING
FURTHER PROCEEDINGS**

Plaintiff Robert Stone is a prisoner currently incarcerated at Wabash
Valley Correctional Facility. He filed this civil action alleging a variety of federal
law claims based on his time at Pendleton Correctional Facility. Because the
plaintiff is a "prisoner," this Court must screen the amended complaint before
service on the defendants. 28 U.S.C. § 1915A(a), (c).

## I. Screening Standard

When screening a complaint, the Court must dismiss any portion that is
frivolous or malicious, fails to state a claim for relief, or seeks monetary relief
against a defendant who is immune from such relief. 28 U.S.C. § 1915A(b). To
determine whether the complaint states a claim, the Court applies the same
standard as when addressing a motion to dismiss under Federal Rule of Civil
Procedure 12(b)(6). *See Schillinger v. Kiley*, 954 F.3d 990, 993 (7th Cir. 2020).
Under that standard, a complaint must include "enough facts to state a claim
to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544,
570 (2007). "A claim has facial plausibility when the plaintiff pleads factual

content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Court construes *pro se* complaints liberally and holds them to a "less stringent standard than pleadings drafted by lawyers." *Cesal v. Moats*, 851 F.3d 714, 720 (7th Cir. 2017).

## II. The Complaint

Mr. Stone's factual allegations are accepted as true at the pleading stage. *See Lisby v. Henderson*, 74 F.4th 470, 472 (7th Cir. 2023). In the amended complaint, Mr. Stone names four defendants: (1) Deputy Warden Charlie Fox; (2) Aramark food director Aaron Benefiel; (3) Aramark food director Tisha Thompson; and (4) Aramark staff Lori Fish. He sues each in their individual capacity. Dkt. 21 at 1-2.

On March 15, 2023, Mr. Benefiel went into the inmate bathroom where he saw Mr. Stone and others using the restroom and notified custody staff, who then raided the bathroom. *Id.* at 2. Mr. Stone was placed in handcuffs and escorted to the "D.O." building to be placed in a dry cell without first seeing medical. *Id.* Mr. Benefiel filed a conduct report (B-231), a bad evaluation, and a memorandum to the count desk requesting that Mr. Stone be struck from food service pending his conduct violation. *Id.*

On April 2, Mr. Stone filed a classification appeal pertaining to his removal from his job pending the conduct report. *Id.* On April 20, Mr. Stone filed a grievance regarding the conduct report and work evaluation. *Id.* On May 30, he filed multiple grievances but failed to receive any updates or receipts

showing that the grievance had been filed. *Id.* Mr. Stone received a document regarding his unanswered grievance where he was told by a liaison at Pendleton Correctional Facility that this was a "facility person[nel]" error. *Id.*

On June 21, Mr. Stone was found not guilty of the conduct violation that was reported by Mr. Benefiel, in part because of his disability (wrist injury) and new prescribed medication. *Id.* On August 2, Mr. Stone signed his classification documents to be able to return to work at his kitchen job. *Id.* at 3.

In September, Mr. Stone filed a request for interview to Ms. Thompson requesting backpay for state wages from March 15 to June 21 because he was found not guilty of the conduct report. *Id.* He did not receive a response. *Id.* Mr. Stone returned to his kitchen job and spoke with Ms. Thompson and Ms. Fish requesting his backpay. *Id.* Ms. Thompson said that she filed the request with Deputy Warden Fox but was waiting to hear back. *Id.*

On November 15, Deputy Warden Fox responded to Mr. Stone's grievance stating that his concerns had been forwarded to the business office, who advised that they are working to correct any and all issues with the state pay. *Id.* Deputy Warden Fox advised Mr. Stone that he should reach out to his supervisor if it is still incorrect to resolve the issue but stated that there was no relief he could personally offer. *Id.* Mr. Stone lost wages in the amount of $295.00. *Id.*

Mr. Stone alleges that Ms. Thompson and Ms. Fish retaliated against him after finding out that he had beat the conduct violation. *Id.* On September 6, Ms. Fish filed a bad work evaluation on Mr. Stone stating that he was failing to

meet work expectations and removed him from his job. *Id.* Mr. Stone filed grievances regarding Ms. Thompson and Ms. Fish for his removal from his job after the not guilty finding. *Id.* at 4.

His backpay was never paid per policy and administrative procedure 02-04-101: "the offender has the ability to be reimbursed for state wages lost due to action taken pending the hearing if the offender is found not guilty [or] is later overturned as indicated in Procedures IX. E. 7." *Id.*

Mr. Stone seeks compensatory and punitive damages. *Id.* at 1.

### III. Discussion of Claims

Although a plaintiff need not plead legal theories in a complaint, see Fed. R. Civ. P. 8(a), Mr. Stone has identified the theories he wishes to use—First Amendment retaliation, Eighth Amendment cruel and unusual punishment, Fourteenth Amendment equal protection, failure to protect, and due process. Where a pro se litigant has expressly stated the legal theories he wishes to pursue, the district court is not required to analyze whether the allegations in the complaint might state a claim under a different legal theory. *See Larry v. Goldsmith*, 799 F. App'x 413, 416 (7th Cir. 2016) (citing *Clancy v. Office of Foreign Assets Control of U.S. Dep't of Treasury*, 559 F.3d 595, 606-07 (7th Cir. 2009)). Thus, the court analyzes Mr. Stone's claims only under the theories he has identified.

Applying the screening standard to the factual allegations in the complaint, certain claims are dismissed while other claims shall proceed as submitted.

4

First, claims brought under the Equal Protection Clause are **dismissed** for failure to state a claim upon which relief can be granted. The Constitution protects one from disparate treatment based on membership in a protected class. *Greer v. Amesqua*, 212 F.3d 358, 370 (7th Cir. 2000). Claims brought under the Equal Protection Clause are dismissed for failure to state a claim upon which relief may be granted. This is because there is no allegation that Mr. Stone was discriminated against because of his membership in a particular class. *Herro v. City of Milwaukee*, 44 F.3d 550, 552 (7th Cir. 1995) (internal quotation omitted). To state an Equal Protection claim, Mr. Stone must allege that (1) he was a member of a protected class, (2) he was treated differently from a similarly situated member of an unprotected class, and (3) the defendants were motivated by a discriminatory purpose. *Alston v. City of Madison*, 853 F.3d 901, 906 (7th Cir. 2017). Here Mr. Stone does not allege that he was a member of a protected class. For this reason, all claims under the Fourteenth Amendment Equal Protection Clause must be **dismissed**.

Next, Mr. Stone's failure to protect claim must be **dismissed**. The Eighth Amendment imposes on prison officials "a duty to protect prisoners from violence at the hands of other prisoners." *LaBrec v. Walker*, 948 F.3d 836, 841 (7th Cir. 2020) (citing *Farmer v. Brennan*, 511 U.S. 825, 833 (1994)). Yet, to prevail on a failure-to-protect claim, the plaintiff "must show that the prison official was deliberately indifferent to an excessive risk to the prisoner's health or safety." *Id.* "[T]he prison official must have actual, not merely constructive, knowledge of the risk to be liable." *Id.* "[A] complaint that identifies a specific,

5

credible, and imminent risk of serious harm and identifies the prospective assailant typically will support an inference that the official to whom the complaint was communicated had actual knowledge of the risk." *Gevas v. McLaughlin*, 798 F.3d 475, 481 (7th Cir. 2015). Here, Mr. Stone makes no allegation that there was an excessive risk to his health or safety by another inmate.

Additionally, Mr. Stone's due process claim must be **dismissed**. There is no protected interest in a prison job, and thus there is no due process required with respect to losing a job. *Antoine v. Uchtman*, 275 Fed Appx 539, 541 (7th Cir. 2008)

Furthermore, to state a First Amendment retaliation claim, Mr. Stone must allege that: (1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter First Amendment activity; and (3) the protected activity he engaged in was at least a motivating factor for the retaliatory action. *Archer v. Chisholm*, 870 F.3d 603, 618 (7th Cir. 2017) (citing *Bridges v. Gilbert*, 557 F.3d 541, 546 (7th Cir. 2009); *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)). Here, Mr. Stone alleges that Mr. Benefiel retaliated against him by filing a conduct report and bad work evaluation. However, because Mr. Benefiel's actions occurred prior to Mr. Stone's engagement in activity he claims was protected the First Amendment - filing a grievance or classification appeal - they cannot be considered retaliatory action. For this reason, the First Amendment retaliation claim against Mr. Benefiel must be **dismissed**.

6

Mr. Stone also asserts a First Amendment retaliation claim against Deputy Warden Fox. He alleges this because Deputy Warden Fox responded to Mr. Stone's grievance pertaining to his backpay by telling him to contact his supervisor to resolve the issue, when his supervisor had not resolved it - causing the need for a grievance. Notably, filing a prison grievance is a protected activity that may support a First Amendment retaliation claim. *See Daugherty v. Page*, 906 F.3d 606, 610 (7th Cir. 2018). But the above facts, without more, do not permit a reasonable inference that Mr. Stone's grievance was "at least a motivating factor" for Warden Fox's alleged inaction. *See Bilek v. Fed. Ins. Co.*, 8 F.4th 581, 586 (7th Cir. 2021) (requiring a plaintiff to "allege enough details . . . to present a story that holds together"). Indeed, no facts suggest a causal link. For this reason, Mr. Stone's First Amendment retaliation claims against Charlie Fox must be **dismissed**.

Mr. Stone also alleges that Ms. Thompson retaliated against him after finding out that he had beat the conduct violations. However, the only facts offered in relation to Ms. Thompson do not show this. When asked about the backpay, Ms. Thompson told Mr. Stone that she filed a request with Warden Fox and was waiting to hear back. Mr. Stone does not allege that Ms. Thompson took any action thereafter that could be understood as retaliation. For this reason, the First Amendment retaliation claim against Tisha Thompson must be **dismissed**.

Mr. Stone also alleges that the defendants violated his Eighth Amendment rights. Constitutional claims are to be addressed under the most

applicable provision. *See Conyers v. Abitz*, 416 F.3d 580, 586 (7th Cir. 2005). The Eighth Amendment claims are **dismissed** because no factual allegations support an Eighth Amendment violation. Rather, Mr. Stone restates in this part of his amended complaint that Defendants "retaliated" against him, which are claims the Court has already addressed. Dkt. 21 at 5-6.

Mr. Stone additionally asserts that Deputy Warden Fox failed to comply with policy and procedure requiring the reimbursement of an inmate who lost wages for a pending conduct violation that resulted in a finding of not guilty. However, 42 U.S.C. § 1983 protects the plaintiff from constitutional violations, not violations of state law or policies and procedures. *See Scott v. Edinburg*, 346 F.3d 752, 760 (7th Cir. 2003).

The claim that **shall proceed** is the following: a First Amendment retaliation claim against Lori Fish based on the bad work evaluation and removal of him from his kitchen job after classification appeals and grievances had been filed and requests for backpay made.

This summary of claims includes all of the viable claims identified by the Court. All other claims have been dismissed. If the plaintiff believes that additional claims were alleged in the complaint, but not identified by the Court, he shall have **through March 4, 2026,** in which to file a motion to reconsider the screening order.

The **clerk is directed** to terminate Christina Reagle, Charlie Fox, Dennis Reagle, Laura Bodkin, Brandy Widener, Isaac Randolph, Aaron Benefiel, Tisha Thompson, and S. Edmonds as defendants on the docket.

## IV. Conclusion and Service of Process

The following claim is proceeding in this action: a First Amendment retaliation claim against Lori Fish. All other claims have been dismissed.

The **clerk is directed** pursuant to Fed. R. Civ. P. 4(c)(3) to issue process to defendant Lori Fish in the manner specified by Rule 4(d). Process shall consist of the amended complaint filed on December 11, 2025, dkt. [21], applicable forms (Notice of Lawsuit and Request for Waiver of Service of Summons and Waiver of Service of Summons), and this Order.

Nothing in this Order prohibits the filing of a proper motion pursuant to Rule 12 of the Federal Rules of Civil Procedure.

**SO ORDERED.**

Date: 2/9/2026

*James Patrick Hanlon*
James Patrick Hanlon
United States District Judge
Southern District of Indiana


Distribution:

ROBERT STONE
194745
WABASH VALLEY - CF
Wabash Valley Correctional Facility
6908 S. Old US Hwy 41
CARLISLE, IN 47838

Lori Fish, Aramark Employee
WABASH VALLEY - CF
Wabash Valley Correctional Facility
6908 S. Old US Hwy 41
CARLISLE, IN 47838

Courtesy Copy To:
Georgianna Q. Tutwiler
Hume Smith Geddes Green & Simmons, LLP
54 Monument Circle, Suite 400
Indianapolis, IN  46204